1

2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

RECEIVED AND FILED
'02 MAR 14 AM 7: 55
U.S. CLERK'S OFFICE
DISTRICT COURT
SAN JUAN, P.R.

3

ANTONIA ROSADO, et al.

4

Plaintiffs

5

v.                                    **CIVIL NO. 98-1065 (DRD)**

6

JOSE GUILLERMO RODRIGUEZ, et al.

7

Defendants

8

_____

9

<u>**REPORT AND RECOMMENDATION**</u>

10

        Plaintiffs, former employees of the Municipality of Mayagüez, filed this action under 42

11

U.S.C. § 1993, on January 28, 1998,  against defendants Hon. José Guillermo Rodríguez (the

12

Municipality's Mayor), Enrique A. Rosas-López (former Director of Human Resources of the

13

Municipality), Edgardo Rodríguez (Director of Human Rosources of the Municiplaity), and Antonio

14

Rosario,  alleging that the decision to privatize several departments in the Municipality and the

15

implementation of the Municipality's Lay Off plan was carried out in a discriminatory manner in

16

violation of their constitutional rights. (<u>See</u> Docket No. 1).[1] Specifically, plaintiffs assert that the

17

implementation of the Lay Off Plan was a subterfuge to mask political discrimination against the

18

supporters of a rival faction within the same political party, the PDP.[2]  In addition, plaintiffs have

19

brought forth several supplemental claims under state law.

20

        On May 2, 2001, defendants filed a Motion for Summary Judgment alleging that most of the

21

plaintiffs have failed to establish a cognizable claim of political discrimination (Docket No. 62).[3]

22

_____

23

        [1]        The last amended complaint in this case was filed on April 29, 1998 (Docket No. 12).

24

The cases were consolidated on April 23, 1999. (Dockets No. 25 and 26).

25

        [2]        Plaintiffs allege that they supported Representative Ferdinand Lugo in his aspiration

to run against Mayor Rodríguez in the primary elections of 1995. Plaintiffs identify their support of

26

Ferdinand Lugo as the only reason for their dismissal.

27

        [3]        The plaintiffs are: Antonia Rosado, Elias Cortes, Luis A. Pares Rodriguez, Rufino

28

Barbosa Vargas, Roberto Gonzalez Cabassa, Josue Rosario Lugo, Emiliano Irizarry Feliciano,
Leopoldo Irizarry Balaguer, Jose R. Rivera Perez, Miguel Mendez Morales, Nelson Castillo
Justiniano, Esteban Morales Vargas, Jose R. Lebron Morciglio, Israel Acevedo Guzman, Eduardo

**CIVIL NO. 98-1065 (DRD**                                2

In addition, defendants filed a Motion to Dismiss on that same date, alleging that several plaintiffs

had failed to appear at their depositions, and thus their claims should be dismissed. (See Docket No.

63). Defendant also filed another Summary Judgment Motion as to two plaintiffs on the grounds

that their claims fell outside the prescribed statute of limitations period. (See Docket No. 64).[4]

Plaintiffs filed a response in opposition to the defendants' summary judgment motions on June 20,

2001. (Docket No. 68).[5]

## MOTION TO DISMISS

Defendants filed a Motion to Dismiss (Docket No. 63), whereby they seek the dismissal with

prejudice of the claims of the eighteen (18) plaintiffs who failed to appear to their scheduled

depositions.[6] Defendants contend that these eighteen plaintiffs failed to appear to their scheduled

depositions despite the fact that the parties had agreed to a discovery schedule which was submitted

---

Malave Zeno, Sadi Justiniano Justiniano, Roberto Pagan Ortiz, Roberto Pagan Santiago,  Edison Rivera Rivera, Juan Rivera Ramos, Dominga Garcia Quinones, Carlos M. Martinez Ramos, Jesus Comas Ayala, Nilsa Rossy Saavedra, Jorge L. Torres Martinez, Miguel Cruz Rodriguez, Carlos Rivera Barbosa, Dinora Rodriguez Toro, Heriberto Rodriguez Diaz, Ismael Silva Pardo, Luis A. Rodriguez Feliciano, Antonio Rodriguez Sanchez, Agustin Vazquez Cardona, Luis Ramon Torres, Ramon Martinez Marrero, Wilfredo Estrella Santana, Richard Gonzalez Cumba, Jose L. Santiago Velez, Angel Caraballo Ortiz, Mariano Carrero Ramirez, Pedro C. Garcia Rivera, Pedro E. Bello Bornard, Elizabeth Barbosa, Luis A. Caban Vigo, Frank Cordero Pardo, Maria Cuevas Montalvo, Antonio Chaluisant Mercado, William de Jesus Salazar, Francisco Gordils Bonilla, Samuel Lopez Rosario, Pablo Lugo Cardoza, Espiridion Mercado Velez, Rafael Maldonado Rivera, Pablo Mendez Bracety, Efrain Pabon Rodriguez, Juan Padilla Barrett, Arquelio Padilla Rodriguez, Jose Ramiro Perez Pacheco, Miguel A. Quinones Soto, Miguel Ramirez Alcover, Benigno Vializ Elias, William Velez Fuentes, Santiago Vazquez Rosado

[4]    The two plaintiffs mentioned in Docket No. 64 are: Wilson Seda Vasallo and Elizabeth Gueits

[5]    This motion was filed by all plaintiffs in response to the three motion filed by the defendants (Dockets No. 62, 63 and 64). The plaintiffs were given additional time to respond to the defendants' reply on November 2, 2001 (Docket No. 82), but to this date no reply has been filed.

[6]    These plaintiffs are: Nelson Goyco Cruz, Juan Rodríguez Palidura José A. Martir Rodríguez, Víctor Lugo Torres, Lucía Ayala Aponte, Harlin Rodríguez Soto, Nestor Vivas Dulrebre, Noemí Lugo González, Arsenio Pérez Feliciano, Jorge L. Albelo Rodríguez, Carmen Morales, Pedro A. Cortés Cancel, Alfredo Alayón Soto, Haydée Torres Morales, José A Tral Morales, Luis Roberto Mercado Rivera, Damian Avilés Rosado and Wilson Rivera Torres.

1  **CIVIL NO. 98-1065 (DRD**        3

2  to the Court on September 6, 2000. (See Motion in Compliance with Order and Docket No. 52). The

3  depositions were supposed to take place from October of 2000 through January 2001.     Rather

4  than oppose defendants' Motion to Dismiss, plaintiff have addressed the aforementioned issue in

5  a small section within their opposition to defendants' Motion for Summary Judgment. (See Docket

6  No. 68, pg. 30). Plaintiffs' attorneys candidly admit that several of the plaintiffs did not in fact

7  appear at their scheduled depositions, and that they will make the necessary effort to "clarify. . .and.

8  . .determine whether said plaintiffs were dully notified or not, and to see if they are still interested

9  in pursuing their cases. . .". (See Docket No. 68, pg. 30). Clearly, this is not the time to make such

10  an effort. This case was filed in 1998, and by Order of the Court all depositions were to be

11  concluded by January 25, 2001. (See Docket No. 52). To this date, March 11, 2002, this Court has

12  still not been informed of the reason why the aforementioned plaintiffs failed to appear at their

13  scheduled depositions. Certainly, this Court may under Rule 37 of the Federal Rules of Civil

14  Procedure, dismiss plaintiffs' complaint with prejudice for failure to appear at their own deposition.

15  See, e.g., Guex v. Allmerica Financial Life Insurance and Annuity Co., 146 F.3d 40 (1st Cir. 1998).

16  In addition, Federal Rule of Civil Procedure 41(b) gives the Court a general grant of authority,

17  "allowing dismissal for. . .failure to comply with any order of the court." Angulo-Alvarez v. Aponte

18  De La Torre, 170 F.3d 246, 251 (1st Cir. 1999). Therefore, this Court recommends that defendants'

19  Motion to Dismiss be **GRANTED**.

20

21  **MOTIONS FOR SUMMARY JUDGMENT**

22        Rule 56(c), of the Federal Rules of Civil Procedure, sets forth the standard for ruling on

23  summary judgment motions: The judgment sought shall be rendered forthwith if the pleadings,

24  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

25  show that there is no genuine issue of material fact and that the moving party is entitled to a

26  judgment as a matter of law. Fed. R. Civ. P. 56(c). The critical question is whether a genuine issue

27  of material fact exists. A genuine issue exists if there is sufficient evidence supporting the claimed

28  factual dispute to require a choice between the parties' differing versions of the truth at trial. Morris

     v. Government Dev. Bank of Puerto Rico, 27 F.3d 746, 748 (1st Cir. 1994); LeBlanc v. Great Am.

CIVIL NO. 98-1065 (DRD                    4

Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993), cert. denied, 511 U.S. 1018 (1994). A fact is material if it might affect the outcome of the suit under the governing law. Morrisey v. Boston Five Cents Sav. Bank, 54 F.3d 27, 31 (1st Cir. 1995); Maldonando Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994). On a motion for summary judgment, the court must view all evidence and related inferences in the light most favorable to the nonmoving party. See Springfield Terminal Ry. v. Canadian Pac. Ltd., 133 F.3d 103, 106 (1st Cir. 1997). Nonetheless, the court is free to "ignore 'conclusory allegations, improbable inferences and unsupported speculation.'" Súarez v. Pueblo International, Inc., 229 F.3d 49, 53 (1st Cir. 2000) (citing Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)).

In order to aid the court in the daunting task of searching for genuine issues of material fact in the record, this district adopted Local Rule 311.12. See, e.g., Corrada Betances v. Sea-Land Service, Inc., 248 F.3d 40, 43-44 (1st Cir. 2001); Morales v. Orssleff's EFTE, 246 F.3d 32, 33-35 (1st Cir. 2001); Ruiz Rivera v. Riley, 209 F.3d 24, 27-28 (1st Cir. 2000). This rule, requires, in relevant part, that a party moving for summary judgment submits, in support of the motion, "a separate, short concise statement of material facts as to which the moving party contends there is no genuine issue to be tried and the basis of such contention as to each material fact, properly supported by specific reference to the record." D.P.R.R. 311.12.

It is clearly established in this District that compliance with Local Rule 311.12 is critical, given that the Court will only consider the facts alleged in the aforementioned 311.12 statements when entertaining the movant's arguments. See Rivera de Torres v. Telefónica de Puerto Rico, 913 F.Supp. 81 (D.P.R. 1995). In this case, defendants filed two statements of uncontested material facts one for each of their summary judgment motions supported by the appropriate references to the specific evidence on file, pursuant to Local Rule 311.12. (See Dockets No. 62 and 64).[7]

---

[7]    The 311.12 statement contained in defendants' Motion for Summary Judgment (Docket No. 64) contains the specific facts and references pertaining to plaintiffs Wilson Seda Vasallo and Elizabeth Geits Rodríguez. However, defendants also make a cross-reference to the 311.12 statement contained in their other summary judgment motion, which details the specific facts of the Municipality's lay-off plan and its implementation.

CIVIL NO. 98-1065 (DRD                  5

**I.** *Motion for Summary Judgment on Statute of Limitations Ground-Docket No.64:*

Plaintiffs, on the other hand, have failed to comply with the requirements of Local Rule 311.12, given that they filed a general and cryptic statement of contested material facts (see Docket No. 68) bereft of the specific references to the record that the rule requires. As a practical matter, plaintiffs Wilson Seda Vasallo and Elizabeth Geits Rodríguez failed to file a 311.12 statement. The all-inclusive 311.12 statement filed by plaintiffs in conjunction with their opposition motion (Docket No. 68), fails to mention a single fact and/or a reference relative to whether the causes of action of plaintiffs Seda Vasallo and Geits Rodríguez were filed within the prescribed statutory period. Therefore, this Court will deem admitted the uncontested facts contained in defendants' 311.12 statement (Docket No. 64), relative to plaintiffs Seda Vasallo and Geits Rodríguez.

The uncontested facts set forth by the defendants and supported by the record, show that both Seda Vasallo and Geits Rodríguez were aware of the alleged discriminatory acts brought forth in their complaints well before the accrual of the one-year statute of limitations period for claims under 42 U.S.C. § 1983. In particular, the uncontested facts show that Seda Vasallo was aware of the alleged discriminatory practices as of August of 1996, or at the very latest, February of 1997, but did not file his complaint until May of 1998, after the statutory period of one-year had elapsed. (See Docket No. 64, pgs. 3 and 7). Geits Rodríguez, in turn, knew of the alleged discriminatory denial of her petition to a permanent position sometime in 1996, but did not file her claim until January 5, 1999. (See Docket No. 64, pgs. 4 and 8). Defendants' motion for summary judgment based on the grounds that the claims of Seda Vasallo and Geits Rodríguez are time barred should be granted, since there is no genuine issue of material fact as to the time in which the aforementioned plaintiffs knew of the alleged discriminatory acts alleged in their complaints.

**II.** *Motion for Summary Judgment-Docket No. 62:*

Out of the twenty-three (23) facts enumerated by plaintiffs in their 311.12 statement, fifteen (15) facts contain no specific references to the record.[8] A list of facts with no specific references to

---

[8] In their meager attempt to comply with Rule 311.12, plaintiffs have followed each of their general and conclusory statements of fact with a parenthetical reference instructing the Court to look at Exhibits 1 through 84 to find support in the record as to each specific fact contained in the

1  **CIVIL NO. 98-1065 (DRD**                    6

2  the record is of no use to the Court.  In other words, without specific references to the record the list

3  of uncontested facts is worthless, given that "[t]he Court would have to continue to ferret through

4  the record, read all the answers to the interrogatories, study all the attached documents, and carefully

5  scrutinize all the depositions for lurking genuine issues of material fact." Dominguez v. Eli Lilly &

6  Co., 958 F.Supp. 721, 727 (D.P.R. 1997)(citing Stepanishen v. Merchants Despatch Transp. Corp.,

7  722 F.2d 922, 930-931 (1st Cir. 1983).  See also, Velez v. Puerto Rico Electric Power Authority, 170

8  F.Supp.2d 158, 160-164 (D.P.R. 2001).

9         "When a party opposing a motion for summary judgment fails to comply with the 'anti-ferret

10 rule,' the statement of material facts filed by the party seeking summary judgment [shall be] deemed

11 . . . admitted." Méndez-Marrero v. Toledo, 968 F.Supp. 27, 34 (D.P.R. 1997); Tavárez v. Champion

12 Prods., Inc., 903 F.Supp. 268, 270 (D.P.R. 1995).  Even though the nonmovants' failure to provide

13 a statement of contested material facts in compliance with Rule 311.12 does not automatically

14 warrant the granting of summary judgment, it nonetheless "launches [their] case down the road

15 towards an easy dismissal." Méndez-Marrero v. Toledo, 968 F.Supp. at 34.

16       In view that plaintiffs did not comply with the requirements of Local Rule 311.12, this Court

17 will deem admitted the defendants' statement of uncontested facts, and will therefore examine, given

18 those uncontested facts, whether defendants are entitled to judgment as a matter of law.

19

20                     **FACTUAL BACKGROUND**

21       Defendant, José Guillermo Rodriguez ( hereinafter "Mayor Rodríguez"), has been the Mayor

22 of the Municipality of Mayagüez since January of 1993.  Enrique Rosas was, at all times relevant

23 herein, the Director of Human Resources of said Municipality.

24       During 1997 it became evident that the solid waste disposal and the operation of the landfill

25 were becoming extremely onerous to the Municipality in the economic and operational terms (See

26 Docket No. 64, 311.12 statement,  Exhibits 1- 2).  Mayor Rodríguez submitted a project for the

27 _____

28 statement.  The Court notes, that this is *not* an appropriate reference to the record.  The record
   contains two hundred and fifty six (256) pages and eighty seven (87) exhibits. Plaintiff, by making
   a general reference to eighty-four (84) exhibits, is forcing the Court to do precisely what Rule 311.12
   seeks to avoid, that is, ferret through the entire record.

1  **CIVIL NO. 98-1065 (DRD**                    7

2  Municipal Assembly's consideration and approval related to the evaluation of alternatives for the

3  provision of solid waste disposal services and the operation of the landfill.  On June 26, 1997 the

4  Municipal Assembly approved Municipal Ordinance No. 102, 1996-97 Series. Id.

5          On July 31, 1997, the Municipality entered into a contract with El Coquí Waste Disposal,

6  Inc., for the provision of services of solid waste disposal and for the operation of the Municipal

7  landfill.  (Id. at Exhibit 3).  Through Resolution No. 23, dated July 31, 1997, the Municipal

8  Assembly  ratified the contract between the Municipality and El Coquí Waste Disposal, Inc. (Id. at

9  Exhibit 4).

10  I. *Lay-off plan as it pertained to the employees of the Municipal landfill (98-1065)*:

11          On May 19, 1997, Mayor Rodríguez adopted a Layoff Plan which would serve to regulate

12  all layoffs of personnel as a result of lack of funds, work shortages, reorganization, the

13  implementation of technological advances and/or the privatization of governmental services. (Id. at

14  Exhibit 5).  On May 19, 1997, the Assembly ratified the aforementioned plan pursuant to the

15  Commonwealth of Puerto Rico Autonomous Municipalities Act. (Id. at Exhibit 6).  On May 20,

16 . 1997, a copy of the Lay-off plan was sent to all municipal employees. (Id. at Exhibit 7).  Seniority

17  Lists of all municipal employees were prepared and posted reflecting each employee's date of hire,

18  seniority and title of classification. (Id. at Exhibit 8).

19          On May 21, 1997, a Notice of Seniority was sent to all municipal employees reflecting the

20  amount of time for which they worked for the Municipality in  accordance to each employee's

21  personnel record. (Id. at Exhibit 9).  Employees who did not agree with their seniority status had the

22  opportunity to submit any available evidence to challenge the same.  (Id. at Exhibits 9 and 10).  In

23  addition,  employees affected by the Layoff Plan were informed of their right to appeal before the

24  Puerto Rico Personnel System Appeals Board (JASAP) and their right to reinstatement according

25  to the Reinstatement Registry. (Id. at Exhibit 11).

26          On July 10, 1997, municipal employees who had been previously informed of their layoffs,

27  effective July 31, 1997, and who had priority in the Reinstatement Registry, were summoned to an

28  interview on July 14, 1997, to accept various available positions as transitory or part-time

   employees. (Id. at Exhibit 12).  Also on July 10, 1997, the affected employees were informed that

1  **CIVIL NO. 98-1065 (DRD**                    8

2  El Coquí Waste Disposal, Inc., would be hiring employees for several positions within the company,

3  as per its duty under their contract with the Municipality. (Id. at Exhibit 13).

4           On July 10, 1997, as part of the operation of the Layoff Plan, the Municipality made offers

5  of employment to some of the employees who were originally thought to be affected by operation

6  of the plan, but were eligible to occupy positions within other municipal departments. (Id. at Exhibit

7  14).

8  **II. _Lay-off plan as to the employees of the  Hospital San Antonio and vehicular fleet (99-1004):_**

9           On March 24, 1998, all municipal employees were notified by the Mayor of the Layoff Plan

10  to be implemented as a result of the privatization of Hospital San Antonio. The Plan was ratified by

11  the Assembly on May 19, 1997, and copies were sent to the different municipal departments

12  thereafter. (Id. at Exhibit 16).  Contemporaneously, the Municipal Assembly authorized the Mayor

13  to negotiate the privatization of services for the repair and maintenance of the municipal vehicular

14  fleet. (Id. at Exhibit 17).  Once again, seniority lists of all municipal employees were available and

15  posted reflecting each employee's date of hire, seniority, and title of classification. (Id. at Exhibit

16  18).

17           On May 4, 1998, a Notice of Seniority was sent to all municipal employees reflecting the

18  time they worked according to each employee's personnel record. (Id. at Exhibit 19). Employees

19  who did not agree with their seniority status were given the opportunity to submit additional

20  evidence to challenge their entitlement. (Id. at Exhibits 19 and 20).  Based on the seniority of the

21  laid-off employees, a reinstatement registry was prepared and published.  (Id. at Exhibit 21).  On

22  May 16, 1998, the employees affected by the plan were informed of their right to appeal and their

23  right to reinstatement in accordance with the registry. (Id.  at Exhibit 22).

24           On June 9, 1998, those employees who had previously been informed of their layoffs,

25  effective June 30, 1998, were notified that the new effective date for the layoffs would be on July

26  31, 1998. (Id. at Exhibit 23).  On July 21, 1998, the employees to be laid off were notified that, due

27  to the prolonged negotiation process for the privatization of the maintenance and repair services, the

28  layoffs would be effective on September 20, 1998. (Id. at Exhibit 24).

CIVIL NO. 98-1065 (DRD                    9

## DISCUSSION

"When political discrimination is alleged in a case involving the dismissal of a non-policymaking employee, the plaintiff[s] must first produce sufficient evidence, either direct or circumstantial , from which a 'rational jury could find that political affiliation was a substantial or motivating factor behind the adverse employment action.'" <u>Angulo-Alvarez v. Aponte De La Torre</u>, 170 F.3d at 249 (citing <u>Rodríguez-Rios v. Cordero</u>, 138 F.3d 22, 24 (1st Cir. 1998)). <u>See also</u>, <u>Figueroa-Serrano v. Ramos-Alverio</u>, 221 F.3d 1, 7-8 (1st Cir. 2000).  As previously discussed, the plaintiffs have failed to submit a proper 311.12 statement from which the Court could determine, whether or not there is sufficient evidence to establish if plaintiffs' political affiliation  was a substantial or motivating factor behind the adverse employment action.  The defendants have made reference to each particular plaintiff and to his or her lack of evidence as to the issue of whether his or her political affiliation was a substantial or motivating factor behind the adverse employment action taken against that particular plaintiff. (<u>See</u> Docket No. 62, 311.12 statement, pgs. 6-24). Plaintiffs, on the other hand, fail to present this Court with any specific evidence from which to sustain their prima facie cases of political discrimination.  This Court is not obliged to sift through a two hundred and fifty-six (256) page record and map out each of the relevant facts which could substantiate a claim for political discrimination as to each of the plaintiffs with no guidance whatsoever from the plaintiffs' attorneys.

Not only have plaintiffs undisputably failed to meet the threshold burden of establishing that their political affiliation was a substantial or motivating factor behind the adverse employment action taken by defendants, but most importantly,  the defendants have articulated and proven that the layoff plan was implemented irrespective of the employees' political affiliations. <u>See</u>, <u>e.g.</u>, <u>Angulo-Alvarez v. Aponte De La Torre</u>, 170 F.3d at 249)("Once the plaintiff[s] meet[] the threshold burden, the burden then shifts to the defendant-employer who must articulate a nondiscriminatory basis for the adverse employment action and prove by a preponderance of the evidence that it would have been taken without regard to a plaintiff's political affiliation."). <u>See also</u> <u>Padilla-García v. Guillermo Rodríguez</u>, 212 F.3d 69, 74 (1st Cir. 2000).

CIVIL NO. 98-1065 (DRD                    10

## CONCLUSION

In view of the aforementioned, this Court recommends that defendants' Motion to Dismiss (Docket No. 63) relative to the eighteen plaintiffs who failed to appear at their depositions be **GRANTED**. In addition, the Court recommends that defendants' Motion for Summary Judgment on statute of limitations grounds relative to plaintiffs Seda Vasallo and Geits Rodríguez be **GRANTED**. (Docket No. 64). Defendants' Motion for Summary Judgment (Docket No. 62) pertaining to all the remaining plaintiffs should also be **GRANTED**. Therefore, the consolidated cases should be **DISMISSED** in their entirety.

It should be noted that two plaintiffs, Richard González Cumba and Eduardo Malavé Zeno, have filed documents stating their intention to voluntarily dismiss their claims against the defendants in this case. (See Docket No. 68, Exhibits 88 and 89).

Under the provisions of Rule 510.2, Local Rules, District of Puerto Rico, any party who objects to this report and recommendation must file a written objection thereto with the Clerk of the Court within ten (10) days of the party's receipt of this report and recommendation. The written objections must specifically identify the portion of the recommendation, or report to which objection is made and the basis for such objections. Failure to comply with this rule precludes further appellate review. See Thomas v. Arn, 474 U.S. 140, 155 (1985), reh'g denied, 474 U.S. 1111 (1986); Davet v. Maccorone, 973 F. 2d 22, 30/31 (1st Cir. 1992); Paterson-Leitch v. Massachusetts Elec., 840 F.2d 985 (1st Cir. 1988); Borden v. Secretary of Health and Human Servs., 836 F.2d 4, 6 (1st Cir. 1987); Scott v. Schweiker, 720 F.2d 13, 14 (1st Cir. 1983); United States v. Vega, 678 F. 2d 376, 378-379 (1st Cir. 1982); Park Motor Mart, Inc. Ford Motor Co., 616 F. 2d 603 (1st Cir. 1980).

**SO RECOMMENDED**.

In San Juan, Puerto Rico, this 13th day of March, 2002.

GUSTAVO A. GELPI
United States Magistrate-Judge